[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11436

Non-Argument Calendar

_____

DR. STEVEN RHODES,

Plaintiff-Appellant,

*versus*

DETECTIVE PAUL ROBBINS,
in his individual capacity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cv-00673-MMH-JBT

_____

Before GRANT, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Steven Rhodes was arrested on insurance fraud charges eight years ago, but the charges were dropped after he completed a pretrial intervention program. Rhodes afterward sued Paul Robbins—the detective who signed the affidavit for his arrest warrant—under 42 U.S.C. § 1983, alleging malicious prosecution. The district court dismissed Rhodes's claim in part and later rendered summary judgment for Robbins. Because Robbins is protected by qualified immunity, we affirm.

I.

Rhodes is a chiropractor licensed to practice in Florida. In early 2014, Robbins—a Florida detective working in the department of insurance fraud—began investigating complaints alleging fraudulent insurance billing by Rhodes. After interviewing seven patients, Robbins determined that Rhodes had submitted bills to insurance companies for services that "should not have been performed" or that "were not rendered." Robbins signed an affidavit to that effect and brought it to a judge, who issued an arrest warrant for Rhodes.

Rhodes was arrested on seven counts of false and fraudulent insurance claims and a single count of engaging in a scheme to defraud. *See* Fla. Stat. §§ 817.234(1)(a)(1) (2014), 817.034(4)(a)(3) (2014). But rather than bringing his case to trial, the state referred

it to a felony pretrial intervention program.  Once Rhodes completed the program—which required performing community service, reimbursing the state's investigation costs, and paying restitution to two insurance companies—all charges against him were dropped.

That might have been the end of the story.  But three years later, Rhodes filed suit against Robbins under 42 U.S.C. § 1983, asserting a malicious-prosecution claim based on the violation of his "Fourth Amendment right to be free from unreasonable seizures."  The district court disposed of the case in two stages. First, it dismissed a portion of Rhodes's suit pursuant to Rule 12(b)(6), concluding that Robbins was entitled to qualified immunity on four of the charges he had brought against Rhodes. Then, after a period of discovery, the district court entered summary judgment in favor of Robbins on the remaining four charges—again on the grounds of qualified immunity, but this time considering evidence produced by Rhodes.  Rhodes appeals both decisions.

## II.

To prevail on his § 1983 malicious-prosecution claim, Rhodes must "prove both a violation of his Fourth Amendment right to be free of unreasonable seizures and the elements of the common law tort of malicious prosecution." *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020) (quotations and brackets

4                 Opinion of the Court                 21-11436

omitted).[1]    More specifically, a plaintiff challenging an arrest pursuant to a warrant in a malicious prosecution action must establish both that "the legal process justifying his seizure was constitutionally infirm" and that "his seizure would not otherwise be justified without legal process." *Id.* at 1165.  Showing that an officer "intentionally or recklessly made misstatements or omissions necessary" to support an arrest warrant satisfies the first prong of this inquiry. *Id.*

Robbins raises qualified immunity as a defense.  Qualified immunity "shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Id.* at 1156 (quotation omitted).  It is designed to protect "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted).    An officer seeking qualified immunity must first demonstrate that she was acting within the scope of her discretionary authority when the disputed acts occurred. *Id.*  The burden then shifts to the plaintiff, who must prove both that the

---

[1] On appeal, both parties cite to cases involving false-arrest § 1983 claims rather than to *Williams v. Aguirre*, the case governing the analysis of § 1983 malicious-prosecution claims in this Circuit. *See* 965 F.3d 1147, 1156–70 (11th Cir. 2020).  Because claims of malicious prosecution involve "a different kind of seizure" than those of false arrest, we rely on *Williams* rather than analogizing to false-arrest cases. *Id.* at 1158; *see also id.* at 1164 (abrogating a past case "to the extent it held that the standards for malicious prosecution and false arrest are coextensive").

officer "violated a federal statutory or constitutional right" and that the unlawfulness of the officer's conduct was "clearly established at the time." *Williams*, 965 F.3d at 1156 (quotation omitted).

Rhodes does not dispute that Robbins acted within the scope of his discretionary authority, so we confine our analysis to whether Rhodes has established a violation of clearly established law. Rhodes alleges that Robbins "knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for the warrant for Plaintiff's arrest" and that "such statements or omissions were necessary to the finding of probable cause to issue said warrant." If Rhodes were correct, that would be a violation of clearly established law and qualified immunity would not shield Robbins from liability. But Rhodes does not persuade us.

## III.

We begin by considering the four charges that the district court disposed of at the motion to dismiss stage. We review a district court's order granting a motion to dismiss de novo, accepting the factual allegations in the complaint as true and construing them in the plaintiff's favor. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021). To survive a motion to dismiss, however, a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The district court concluded that even if all of the allegations in Rhodes's complaint were true, four of the eight charges Robbins had brought against Rhodes could not support a claim of malicious prosecution. This Court's analysis in *Williams v. Aguirre* guides our review of that decision. We first ask whether Robbins made an intentional (or reckless) false statement or material omission in the warrant affidavit for each charge brought against Rhodes. At the motion to dismiss stage, we accept allegations in the complaint regarding such falsehoods or omissions as true. We then consider whether, after the alleged falsehoods and omissions are rectified, the affidavit would be sufficient to establish probable cause for each of the charges. *Williams*, 965 F.3d at 1165.

For three of the four charges dismissed by the district court, Rhodes alleges that Robbins omitted material information from the warrant affidavit. Rhodes first attacks the charge arising from his treatment of patient D.B. Rhodes explains that D.B. "indicated that she had been pregnant since May of 2013, so her insurance company should not have been billed for a particular treatment which would have ceased being administered to her upon advising Plaintiff of her pregnancy." He alleges that Robbins possessed copies of D.B.'s medical records, which show that she did not tell Rhodes of her pregnancy until August 2013—and that in any event, D.B.'s child was born in April 2014, making it impossible for her to be pregnant in May 2013.

Changing the affidavit to reflect that Rhodes was not notified of D.B.'s pregnancy until August 2013 does not change the fact that Robbins had probable cause to bring the charge against Rhodes. Even if the pregnancy date is corrected, the only result is that there are three fewer months in which D.B. allegedly did not receive one type of treatment (electrical stimulation). The affidavit would still state that she received no such treatment for a period of eight months.[2] And, of course, the affidavit also states that her insurance company was billed without authorization for three other kinds of treatment. That is sufficient to establish probable cause.

Rhodes next disputes the charge related to his treatment of O.V. Here, he alleges two material omissions made by Robbins: first, that O.V. initially reported that she had been billed over $56,000 by Rhodes, before admitting that it was only $2,734; and second, that after claiming that Rhodes had failed to provide certain services, she told another doctor that "she was receiving the treatments at issue on a regular basis."

These omissions do not render the warrant affidavit insufficient to support probable cause. Rhodes does not allege that the dollar amount on the warrant itself is incorrect, and earlier

---

[2] In his initial brief on appeal, Rhodes argues that in August 2013, D.B. informed him that she was pregnant and "electrical stimulation treatment and billing ceased" at that time. This assertion appears nowhere in the third amended complaint.

estimations (even if inaccurate) do not change the warrant's substantive allegations based on O.V.'s statements—that she "had expressed concern several times when signing paper work for services that were not rendered," that Rhodes and his staff "personally assured her that the paper work would be submitted correctly to the insurance company, but it was not," and that Rhodes billed O.V.'s insurance company without authorization.

Nor does the fact that O.V. told another doctor that she was receiving the treatments have any effect on the affidavit's efficacy. Rhodes's complaint does not allege that *Rhodes* was the doctor providing O.V. "the treatments at issue on a regular basis." O.V.'s statement that she received treatment elsewhere is irrelevant unless she received that treatment from Rhodes—an assumption we have no reason to make.

Rhodes also challenges the insurance fraud charge based on his treatment of B.L. The affidavit states that B.L.'s insurance received unauthorized bills for "Ultrasound Therapy, Traction Therapy and Manual Therapy," and that Rhodes told B.L. that he had billed her insurance company without first giving her the treatment. In response, Rhodes alleges that Robbins omitted from his affidavit paperwork signed by B.L. "attesting the services 'were actually rendered.'"

Once again, correcting this omission does not affect the affidavit's validity. The affidavit describes Rhodes as explaining to B.L. that he had been billing her insurance company without providing treatment, but that he planned to provide that treatment

in the future—this time without billing the insurance company—in order to make up for it. B.L. may have signed the alleged paperwork later, once she received the promised treatment *after* the unauthorized billing (consistent with Rhodes's statement described in the affidavit). Or, similar to O.V.'s experience, she may simply have "sign[ed] paper work for services that were not rendered." B.L.'s signature does not negate her later reports of unauthorized billing.

The affidavit establishes probable cause for the charges based on Rhodes's treatment of D.B., O.V., and B.L. even in spite of its alleged omissions. The district court thus correctly granted Robbins qualified immunity at the motion to dismiss stage to the extent that Rhodes's suit relies on those charges.

The fourth charge dismissed by the district court is dependent on the first three—one count of engaging in a scheme to defraud. This offense is defined by Florida law as "a systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act." Fla. Stat. § 817.034(3)(d) (2014). As shown above, even when Rhodes's allegations are accepted as true, Robbins had probable cause to charge Rhodes with (at least) three counts of making a false and fraudulent insurance claim. That alone establishes probable cause for this charge. Because he had probable cause to charge Rhodes with three insurance fraud offenses, Robbins had a sufficient basis

to conclude that Rhodes engaged in a systematic, ongoing attempt to defraud insurance companies by billing them without authorization for treatment that was not received. The district court thus properly granted qualified immunity to Robbins for this charge at the motion to dismiss stage.

In an attempt to escape this outcome, Rhodes alleges that Robbins made two errors of law that—in his view—invalidate the warrant affidavit and remove any probable cause for the scheme to defraud charge. Qualified immunity protects officers who commit reasonable errors of law. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). So to prevail, Rhodes must show not only that Robbins committed an error of law, but that the error was unreasonable.

The first alleged error relates to the affidavit's assertion that Rhodes's clinic was billing for therapy provided by "a massage therapist with an expired massage license." Rhodes argues that under Florida law, "a chiropractic physician can bill for such manual physical therapy when it is performed by medical assistants incidental to the practice of the physician," and that Robbins's "claim that Plaintiff violated the law by billing for manual therapy was incorrect."

We find no legal authority to support Rhodes's argument that, as a matter of Florida law, doctors may bill insurance companies for manual therapy provided by massage therapists with expired licenses. Rhodes points to *State Farm Mutual Automobile, Insurance Co. v. Universal Medical Center of South Florida, Inc. See* 881 So. 2d 557 (Fla. Dist. Ct. App. 2004). But as

the district court explained, *State Farm* answers "a narrow certified question about medical assistants" and "sheds no light on whether 'manual therapy' performed by an unlicensed massage therapist can be billed" in the way Rhodes argues. Rhodes offers no other cases to support his characterization of Florida law. We thus cannot conclude that Robbins made a mistake of law here.

The second alleged mistake of law relates to the affidavit's statement that "Rhodes was submitting his notes for billing which indicated more units of treatment than what was actually provided." Rhodes's billing company told Robbins that two units of massage involved "hands on treatment for thirty minutes," not including dressing or undressing. But Rhodes explains that the federal Medicare manual applies a less stringent standard: if a "manual therapy session lasts at least 23 minutes, then a provider may bill for two units." Therefore, Rhodes alleges, Robbins (and some of the patients he interviewed) were mistaken in believing that billing less than 30 minutes of therapy as two units was problematic.

Rhodes fails to show that this alleged mistake of law was unreasonable. "Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998). Robbins was told by several patients that unauthorized bills had been submitted to their insurance companies. And even if some of these patients may not have fully understood the billing system, Robbins was reasonably entitled to rely on their consistent testimony (which also

referenced billings for treatments that were not manual therapy at all—and therefore not subject to the rule explained by Rhodes).

In short, Robbins had probable cause to charge Rhodes with engaging in a scheme to defraud, and he did not make an unreasonable mistake of law. We thus conclude that the district court correctly dismissed Rhodes's claim to the extent it was based on the scheme to defraud charge.

## IV.

We next consider the charges against Rhodes rejected at summary judgment. We review de novo a district court's grant of summary judgment, "viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Hill v. Cundiff*, 797 F.3d 948, 967 (11th Cir. 2015). Summary judgment is appropriate when there is no genuine dispute of material fact and the record entitles the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). We reverse a grant of summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Robbins once again asserts the defense of qualified immunity at summary judgment. Our *Williams* analysis remains the same, but at the summary judgment stage we must consider the facts in the record rather than accepting the complaint's allegations as true.

Rhodes argues that the record contains genuine disputes of material fact for the four counts that survived dismissal. Pointing to statements later signed by the patients whose treatment allegedly gave rise to those counts, he contends that they "directly refute[] and conflict[] with the contents" of the warrant affidavit such that it cannot establish probable cause once those portions conflicting with the statements are stricken (the second step under *Williams*).

Even assuming that Rhodes's proffered evidence meets the evidentiary requirements of Rule 56, we are not persuaded.[3] We consider each of the four remaining counts of false and fraudulent insurance claims—those relating to patients R.G., M.S., H.C., and A.N.—in turn.

To begin, the signed statements offered by patients R.G. and M.S, even when accepted as true and construed in Rhodes's favor, do not affect the affidavit's validity.[4] Rhodes argues that each patient's statement demonstrates that Robbins "knowingly included falsities in his warrant affidavit." To begin, Robbins could

---

[3] As the district court explained, three of the four statements on which Rhodes relies are signed and notarized, but unsworn; they do not qualify as affidavits or declarations. Like the district court, we assume without deciding that they are sufficient evidence for consideration at summary judgment.

[4] M.S. was treated alongside H.S., her daughter, and both are referred to in the affidavit in support of the same charge of making false and fraudulent insurance claims. Rhodes offers no evidence regarding H.S., and so we consider only the statements made by M.S. relating to that charge.

not have known when he relied on his interviews with R.G. and M.S. that their stories would later change. What's more, both statements simply assert that the patients "did receive" the medical treatment for which their insurance companies were billed—they do not dispute that R.G. and M.S. *told* Robbins that their insurance companies had been fraudulently billed. We therefore conclude that Robbins had probable cause to bring the charges based on the treatment of R.G. and M.S.

Patient H.C. signed a more substantial statement explaining that he had not fully understood the situation when he was interviewed by Robbins. But once again, the statement goes to the merits of the state's fraud case against Rhodes, not to whether Robbins had probable cause when he signed the affidavit. Like R.G. and M.S., H.C. states clearly that his previous allegation of fraudulent billing was unfounded. But also like those other patients, he does not dispute that he told Robbins otherwise before Robbins prepared the warrant affidavit. Indeed, H.C.'s statement indicates that he changed his view only after previously unknown information was explained to him.

Finally, Rhodes offers no evidence to support his allegation that A.N. "flatly denied" the facts that Robbins claimed to have learned from him. While we construe evidence in the light most favorable to the nonmoving party at summary judgment, here there is no evidence to construe. We cannot conclude that Robbins lacked probable cause for the fraud charge arising out of A.N.'s treatment when the record offers no support for that assertion.

Robbins had probable cause to charge Rhodes with each of the four counts remaining at summary judgment.  We therefore conclude that he is protected by qualified immunity for each of those four charges.

★      ★      ★

We **AFFIRM** the district court's orders dismissing Rhodes's claim in part and rendering summary judgment in favor of Robbins.